**HOMEWOOD DEVELOPMENT CO., Inc., et al. v. BOWLES, Price Administrator.**

No. 147.

United States Emergency Court of Appeals. Heard at New Orleans Dec. 30, 1944.

Filed April 16, 1945.

Leo Gold, of Alexandria, La., for complainants.

Harry H. Schneider, Atty., of Washington, D. C. (Richard H. Field, Gen. Counsel, Nathaniel L. Nathanson, Associate Gen. Counsel, and Warren L. Sharfman, Chief, Court Review Rent Branch, and Isadore Bassoff, all of Washington, D. C., Atty., all of the Office of Price Administration, on the brief), for respondent.

Before MARIS, Chief Judge, and MAGRUDER and LINDLEY, Judges.

MAGRUDER, Judge.

This case involves the adjustment of maximum rents for 90 furnished housing units owned and operated in the Alexandria-Leesville, Louisiana, Defense-Rental Area, by Homewood Development Company, Inc., hereinafter referred to as complainant. The rent regulation for this area became effective July 1, 1942, and fixed January 1, 1941, as the maximum rent date (freeze date). Rent Regulation for Housing, 8 F.R. 7322, 7330. The accommodations in question had been newly constructed by complainant after January 1, 1941, under War Production Board priority or preference rating on the materials necessary for such construction. Eighty-eight of the accommodations consist of 4-room units, in duplex arrangement; the other two are 5-room units. In accordance with the conditions for securing such priority rating, the War Production Board approved a maximum "shelter rent" of $36 per month for each of the 88 4-room units, and $50 per month for each of the two 5-room units. Also, the War Production Board approved maximum charges of $2.50 for stove and $3 for refrigerator to

be supplied with each of the units. This made a total of $41.50 for each of the 4-room units, and $55.50 for each of the 5-room units, equipped with stove and refrigerator but otherwise unfurnished; which charges, under § 4(f) of the regulation, became the maximum rents for the respective accommodations.

Thereafter, complainant equipped each of the 90 units with furniture and furnishings (in addition to stove and refrigerator), and provided water and yard maintenance with the 4-room units. Complainant then filed with the Area Rent Director applications for increases in the maximum rents, under § 5(a) (3) of the regulation, reading as follows:

"Sec. 5. *Adjustments and other determinations.* In the circumstances enumerated in this section, the Administrator may issue an order changing the maximum rents otherwise allowable or the minimum services required. * * *

"(a) *Grounds for increase of maximum rent.* Any landlord may file a petition for adjustment to increase the maximum rent otherwise allowable, only on the grounds that: * * *

"(3) *Substantial increase in services, furniture, furnishings or equipment.* There has been a substantial increase in the services, furniture, furnishings or equipment provided with the housing accommodations since the date or order determining its maximum rent. No increase in the maximum rent shall be ordered on the ground set forth in this paragraph (a) (3) unless the increase in services, furniture, furnishings or equipment occurred with the consent of the tenant or while the accommodations were vacant: * * *."

Rent Director R. N. Jameson issued interim orders under § 5(f) of the regulation [1] allowing increases of $17.00 for furniture, $2.00 for water, and $1.50 for yard maintenance, in respect of the 88 4-room units, which charges, together with the $36.00 for shelter rent and $5.50 for stove and refrigerator previously fixed by the War Production Board, made the maximum rents for the 4-room units $62.00 per month. By interim orders, also, Rent Director Jameson allowed increases of $19.50 for the furniture in each of the 5-room units, bringing the total for them, in addition to the allowances by the War Production Board, to $75 per month.

The provisional character of these interim orders is apparent from the recitals on their face and also from the terms of § 5(f) under which they are issued. They cannot be the foundation of any "estoppel" against the Administrator. [2]

Before the final orders were issued determining the increases to be allowed for the 90 units now in question, Rent Director Jameson was succeeded in office by Mr. V. V. Lamkin.

On or about July 24, 1943, Rent Director Lamkin issued final orders fixing the maximum rents for the 88 4-room units at $52.00 per month. This sum included $36.00 already approved for shelter rent and $5.50 for stove and refrigerator, $3.50 for

[1] "(f) *Interim orders.* Where a petition is filed by a landlord on one of the grounds set out in paragraph (a) of this section, the Administrator may enter an interim order increasing the maximum rent until further order, subject to refund by the landlord to the tenant of any amount received in excess of the maximum rent established by final order upon such petition. The receipt by the landlord of any increased rent authorized by such interim order shall constitute an agreement by the landlord with the tenant to refund to the tenant any amount received in excess of the maximum rent established by final order. The landlord shall make such refund either by repayment in cash or, where the tenant remains in occupancy after the effective date of the final order, by deduction from the next installment of rent, or both."

[2] Complainant also seems to base some claim of "estoppel" on the facts that it had previously completed and furnished certain housing units, not now in issue but said to be substantially identical with the ones in question, and that, as to these earlier units, Rent Director Jameson had issued final orders allowing increases totaling $5.00 per room on account of the addition of furniture. But even such final orders are, under the provisions of §§ 1300.208(b) and 1300.210 of Revised Procedural Regulation No. 3, subject to review, revocation or modification by the rent director, regional administrator, or the Administrator himself, if it should later become apparent that the increases allowed were excessive. They do not fetter the discretion of the administrative officials in making appropriate adjustments in the case of subsequently constructed units.

water and yard maintenance, and $7 for the furniture. Similar final orders were entered fixing the maximum rents for the furnished 5-room units at $65 a month, which included an allowance of $9.50 for furniture, in addition to the allowances for shelter rent and stove and refrigerator.

Complainant sought, and obtained, from the Regional Administrator a review of these final adjustment orders. By order issued December 20, 1943, the Regional Administrator modified the adjustments granted by the Rent Director. He allowed a charge of $12 per month for the furnishing of the two 5-room units, exclusive of stove and refrigerator, bringing the maximum rents for those units to $67.50 per month. In respect to the 88 4-room units, the Regional Administrator disallowed the charge of $1.50 for yard maintenance, but increased the allowance for furniture, exclusive of stove and refrigerator, from $7 to $9.50, thus bringing the maximum rent for those units to $53 per month.

Complainant then filed with the Administrator a protest against this order of the Regional Administrator. Pursuant to leave, complainant submitted to the Administrator certain additional evidence in affidavit form.

On May 10, 1944, the Administrator issued an order, with accompanying opinion, denying the protest and in substance affirming the order of the Regional Administrator.[3]

On June 5, 1944, complainant filed its complaint in this court against the denial of its protest. It was alleged in the complaint that the Administrator acted improperly in denying complainant's request for an oral hearing, particularly for the purpose of taking the testimony of former Rent Director Jameson, and this court was asked to direct the Administrator to grant such oral hearing.

Thereupon the Administrator, before the time for filing in this court the transcript of the protest proceedings, revoked his order denying the protest, and set down the protest for an oral hearing before a designated presiding officer. In view of the charge that Rent Director Lamkin had act-

ed out of personal prejudice against the complainant in reducing the permitted charges for furniture which had been fixed in the interim orders of his predecessor, the Administrator directed two rent inspectors unconnected with the local office to make surveys and to testify at the oral hearing. These two inspectors were Mr. Giles J. Smith, a rent examiner in the OPA office at Kansas City, Mo., and Mr. A. Bentley Cox, a rent examiner from the Little Rock, Ark., Defense-Rental Area. Mr. Smith had been for twenty years in the real estate business; for two years in the Kansas City office he had been making inspections and appraisals of properties in performance of his duties as rent examiner for the OPA. Mr. Cox, prior to joining the staff of the OPA in the Little Rock office, had been for eight years State Appraiser for the Home Owners Loan Corporation.

At the oral hearing before the presiding officer, Mr. Smith and Mr. Cox testified; also Mr. Jameson and Mr. A. K. Ammen, complainant's president and sole stockholder. After the close of the oral hearing, a supplemental written inspection report by the witnesses Smith and Cox was included in the record by stipulation.

The report of the presiding officer was incorporated into the record by order of the Administrator issued September 1, 1944, with opportunity afforded to complainant to present objections thereto. This report recommended that the protest be granted in part so as to establish the maximum rents on the 88 4-room units at $55 per month and on the two 5-room units at $71 per month.

After complainant's objections to the report of the presiding officer were submitted, the Administrator, on September 30, 1944, upon reconsideration of the entire record, issued an order, with lengthy accompanying opinion, again denying the protest.

Inspectors Smith and Cox made a personal examination of a large number of housing units in Alexandria. On the basis of this survey they gave it as their expert opinion, both in oral testimony and in their

---

[3] In his opinion, the Administrator disapproved the action of the Regional Administrator in disallowing a charge for yard maintenance, but concluded that the allowance of $2 per month for water was excessive and that there should be an aggregate allowance of $2 per month for water and yard maintenance with respect to the 4-room units. Thus the Administrator made no change in the over-all maximum rents fixed by the Regional Administrator, namely, $67.50 per month for the 5-room units and $53 per month for the 4-room units.

supplementary report, that the furnishings in the 88 4-room units, exclusive of stove and refrigerator, added to their rental value, as of the maximum rent date, the sum of $15. The corresponding figure for the two 5-room units was found by Messrs. Smith and Cox to be $18. This is the evidence upon which complainant now chiefly relies for the claim that the Administrator has granted too small an adjustment.

In his opinion upon reconsideration, the Administrator declined to accept the testimony of Messrs. Smith and Cox as decisive, and was under the somewhat embarrassing necessity of pointing out at length what he regarded as the flaws and discrepancies in the testimony and report of these two expert members of his own staff, who had been brought in from outside the defense-rental area to make a fresh and impartial survey. Also, the Administrator, for the reasons stated in his opinion, declined to allow even the small increases recommended in the report of the presiding officer who conducted the oral hearing. We do not mean to imply that the Administrator was foreclosed by these recommendations from making such determinations of the amount of the adjustments as in his judgment was proper on the whole record.

The standard for adjustment in this type of case is set forth in § 5 of the regulation as follows:

"In those cases involving * * * an increase or decrease in the furniture, furnishings or equipment, [or] an increase or decrease of services, * * * the adjustment in the maximum rent shall be the amount the Administrator finds would have been on the maximum rent date [January 1, 1941], the difference in the rental value of the housing accommodations by reason of such change * * *."

In applying this standard, the Administrator regards as the most persuasive evidence the difference between actual rentals on the maximum rent date of substantially identical units in the same building, some rented furnished and some unfurnished. This difference represents the increase of rental value as of the maximum rent date by reason of the addition of the furniture, determined by bargaining in the rental market rather than by reference to the opinion of experts. Evidence of this type is "factual" as far as it goes, but there is also an element of judgment involved in comparing the furniture in such units with the furniture in the accommodations whose

rent is being adjusted, and making allowances for any differences which would be reflected in rental value. Furthermore, as the Administrator says, the accommodations thus compared should also be comparable to protestant's accommodations; this again involves an element of judgment. In addition to that, since one swallow does not make a summer, there must of necessity be a judgment as to whether the record contains sufficient clean-cut instances of the type mentioned to warrant the inference that they are fairly representative of the rental market on the maximum rent date.

Complainant points to evidence in the record of 4- and 5-room housing units rented on the freeze date at various monthly rentals higher than the maximum rents allowed by the Administrator. As to this, the Administrator states in his final opinion:

"The fact that certain furnished apartments in the Area have a lower or higher rental does not demonstrate, here, that the furnishing of protestants' units warrants an increase in protestants' maximum rents by the difference between the rentals for the furnished units and the maximum rents (unfurnished) for the subject accommodations. The best and generally accepted criterion is that employed before the Regional Administrator based upon substantially identical units (particularly where comparable to protestants'), the one rented furnished and the other unfurnished on January 1, 1941. In this matter the most accurate approximation of the difference in rental value by reason of furniture is obtained. To determine value on the basis of the data presented by protestants for furnished accommodations, in the face of the other evidence previously discussed, would ignore the most precise evidence and might result in excessive or highly inflationary allowances for furniture, inconsistent with the Regulation and the statute. Specifically, it has been observed repeatedly that rentals for even substantially similar accommodations consistently show normal variations in a market as yet unaffected by war and defense activities. To adjust the rents for protestants' units on the basis of the difference between their rentals unfurnished and those of furnished units, rented on January 1, 1941, but not in a comparable rental status, would grant protestants a premium for furniture which is the result not of its rental value, but of

variations in rentals. This observation becomes all the more important, if not crucial, when it is borne in mind that the rents for protestants' units, unfurnished, were not established by the Regulation on the basis of comparability, but on the basis of rents approved by the War Production Board, under Section 4(f)."

Complainant further points to evidence of comparable 4-room units which were rented unfurnished on the maximum rent date, and with respect to which the Regional Director subsequently granted adjustments on account of furniture supplied after the maximum rent date—adjustments for furniture more liberal than those allowed by the Administrator in the present case. The Administrator's comment on this type of evidence is as follows:

"The amount of the rental increase granted for increases in furniture or services provided after the maximum rent date can, at most, represent a careful approximation of their rental value on that date. The weight of such evidence in no way comes up to the weight of the evidence, previously discussed, which does not require a 'guess' at the rental value of furniture, etc., since the actual difference in rental value is readily apparent from the statement of the maximum date rents for comparable unfurnished and furnished accommodations."

The foregoing evidence favorable to complainant, including the opinion evidence of the expert witnesses Smith and Cox, was regarded by the Administrator as not persuasive in view of what he regarded as more precise "factual" evidence in the record bearing directly on the issue presented.

We think that the Administrator is correct in his analysis of the issue to be decided under the adjustment provision here involved, and of the type of evidence which, if available in sufficient amount, is most persuasive on that issue.

We now consider the evidence which the Administrator deemed to be of the greatest probative value and to outweigh the evidence favorable to complainant.

When the matter was pending before the Regional Administrator upon petition for review, Mr. Howard A. Schladt, the Regional Rent Executive, wrote a long letter dated November 18, 1943, to complainant, reciting certain "information [which] has come to the attention of the Regional Administrator". The letter concluded with this statement: "The purpose of this letter is to inform you of the foregoing facts which appear in the file in connection with these proceedings. The further purpose of this letter is to afford you an opportunity to submit to this office, if you desire to do so, evidence explaining, contradicting, or refuting such facts." At the oral argument, counsel for the Administrator stated that the letter "was taken from a memorandum transmitted to the Regional Office, prepared by the Chief Rent Attorney for the area, Arthur Robinson." However, certain internal indications would seem to point to the conclusion that the memorandum was the work of the Area Rent Director (then Mr. Lamkin); at various places, the letter recites that the Rent Director "finds" this or that, or "is of opinion" this or that, or considered certain apartments to be comparable, or "knows of his own knowledge", etc.

This letter of November 18, 1943, is included in the transcript. There might be some question whether it should be considered as "evidence" of the facts asserted therein, but we pass that point.

The Administrator relies upon data in the letter of November 18, 1943, disclosing "that in each of at least five buildings two substantially identical four-or five-room apartments were rented on the 'freeze' date, the one furnished and the other unfurnished." In most instances the physical descriptions are meager or are lacking altogether, so that one examining the record could hardly determine whether the furnished and unfurnished apartments are in fact "substantially identical", apart from the common feature of number of rooms. The difference between the freeze date rentals of the furnished and unfurnished apartments might reflect in part other factors than the rental value of the furniture; at least, this possibility is not excluded. Also, we are not told what services, if any, were being supplied on the maximum rent date with the furnished or unfurnished apartments, which might invalidate the conclusions to be drawn from a comparison of rentals.

Following are the five buildings referred to by the Administrator:

1. The Delaney Apartments. The letter of November 18, 1943, contains the following description:

"The Delaney Apartments at 2327 Vance Avenue, Alexandria, La., are five-room

apartments situated in a two-story brick building. Two of these apartments were rented unfurnished on January 1, 1941, at $40.00 and $50.00 per month respectively, and two of these apartments were rented furnished on January 1, 1941, for $55.00 and $65.00 per month respectively. According to our information, the $40.00 unfurnished apartment and the $55.00 furnished apartment are on the second floor, and the $50.00 unfurnished apartment and the $65.00 furnished apartment are on the first floor. In this case the difference in rental value by reason of the furniture is obvious."

No description of the furniture is given for purposes of comparison with complainant's. The report of Messrs. Smith and Cox states that they were unable to inspect the $65 furnished apartment, but were informed by tenants in the building that "said furnished unit was poorly equipped with furniture and did not supply cooking utensils, dishes, or linens."

2. The Carstens Apartments. These are described in the letter of November 18, 1943, as follows:

"In the Carstens Apartments at 2102 White Street there are four five-room apartments. On January 1, 1941, two of these apartments were rented unfurnished at $45.00 and $55.00 per month respectively. On January 1, 1941, the other two of these apartments were rented at $60.00 and $70.00 per month, respectively." (Perhaps the implication is that the latter two were rented furnished, though this is not too clear.)

In their report, Inspectors Smith and Cox state that they inspected one unfurnished unit which rented on the freeze date at $50 per month. The Administrator in his opinion says that the registration statements reveal that on January 1, 1941, both unfurnished units rented for $45 per month, and the two furnished apartments then rented for $50 and $65, respectively. The registration statements, however, are not included in the transcript, and we have, as a reviewing court, no means of resolving these apparent discrepancies.

3. The Barrett Apartment. The letter of November 18, 1943, states:

"The Barrett Apartments at 517 Winn Street consist of three frame structures, in each of which structures are two five-room apartments. On January 1, 1941, one of these apartments rented unfurnished at $35.00 per month, one was rented partially furnished at $40.00 per month. One of them was rented furnished at $60.00 per month and three of them were rented furnished for $52.50 per month each."

Inspector Smith stated in his testimony: "Barrett Apartments, 5717 (sic), Wynn, no; that is not comparable. I did not get the rate on it because it is a different type house. It is not comparable."

4. The Normand Apartments. These are described in the letter of November 18, 1943, as follows:

"The Normand apartments which are situated at 2015 and 2021 Jackson Avenue are two-story brick buildings, situated in one of the nicest residential sections of Alexandria and are considered some of the nicest apartments in the City of Alexandria. On January 1, 1941 there was one unfurnished four-room apartment in these buildings renting at $45.00 per month, three furnished four-room apartments renting at $65.00 per month and eight furnished five-room apartments renting at $75.00 per month."

Messrs. Smith and Cox report that they inspected a furnished 5-room unit. Their comment is: "District better than subject and unit, whether furnished or unfurnished, would have had considerably greater value 1-1-41 than subject. In fact, so much so that it could not be considered comparable."

5. The Ward Apartments. These are described in the letter of November 18, 1943, as follows:

"The Ward Apartments at 125 Cook Avenue consist of two five-room apartments in a one-story frame structure. On January 1, 1941, one of these apartments was rented unfurnished for $30.00 per month and the other apartment was rented furnished for $45.00 per month."

The report of Messrs. Smith and Cox states: "Old frame building converted into apartments. First rented September 1943, not comparable in any respect, also not a freeze rent." In contradiction of this, the Administrator in his opinion says that the registration statements for both units reveal "that these units were both rented on January 1, 1941." However, the registration statements are not included in the transcript.

One other instance may be given as illustrative of the unsatisfactory state of

the record, namely, the data with reference to the Weiss Apartments. These are described in the letter of November 18, 1943, as follows:

"The Weiss Apartments at 23rd and Albert Street in Alexandria, Louisiana, are in a two-story brick building. There are four five-room apartments in this building which apartments are being rented on January 1, 1941, for $50.00, $55.00, $60.00, and $65.00 per month. This variation in the rentals was due to the fact that two of the apartments enjoyed the use of a garage and due to the further fact that these same two apartments were more nicely or completely furnished than the other two. Similar or comparable apartments were rented unfurnished in Alexandria on January 1, 1941, within the rental range of from $35.00 to $45.00 per month." (The implication appears to be that all four of the apartments were being rented furnished on January 1, 1941.)

Messrs. Smith and Cox in their report state: "These apartments were found to be unfurnished and consisted of five rooms, rented 1-1-41 at $40.00 per month including garage. This unit was later furnished and so rented 5-1-44 at $65.00 per month * *. The furnishings included a stove and electric refrigerator. The furniture was of only fair grade and by no means new and, in the opinion of these inspectors, did not have the rental value of subject property per room." In his opinion the Administrator says: "The registration statements for the four units show that one was rented unfurnished at $40 per month, and the remaining three were rented furnished at $50, $60, and $60 per month, respectively, on January 1, 1941." The registration statements, however, are not included in the record.

Our conclusion is that the record does not contain substantial evidence in support of the Administrator's determination of the amount of the adjustments.

A judgment will be entered setting aside the order of September 30, 1944, denying the protest, and remanding the case to the Administrator for further proceedings not inconsistent with this opinion.