## GABLE MANAGEMENT CORPORATION OF LOUISIANA et al. v. BOWLES, Price Administrator.

### No. 215.

United States Emergency Court of Appeals.

Heard at Washington, D. C., July 14, 1945.

Filed Aug. 29, 1945.

Scott P. Crampton, of Washington, D. C., (Wilbur L. Matthews, of San Antonio, Tex., on the brief), for complainants.

Harry H. Schneider, Atty., O. P. A., of Washington, D. C., (Richard H. Field, Gen. Counsel, Nathaniel L. Nathanson, Associate Gen. Counsel, Warren L. Sharfman, Chief, Court Review Rent Branch, and Isidore Bassoff, Atty., all of the Office of Price Administration, all of Washington, D. C., on the brief), for respondent.

Before MAGRUDER, McALLISTER, and LAWS, Judges.

McALLISTER, Judge.

Subsequent to its organization in 1941, complainant Gable Management Corporation invested approximately $56,000.00 in building and furnishing housing accommodations known as Gable Lodges, located about five miles west of Lake Charles, Louisiana. The buildings are southern colonial in style, have southern colonial maple furnishings, and are situated on a six-acre landscaped tract, with playgrounds and recreation facilities for guests. Each housing unit is separate, with the exception of the rooms in the main lodge. Some of the units have attached garages. There is also a lounge, forty by eighty feet, which contains books, magazines, newspapers, radios, games, bridge tables, writing desks, chairs, and divans. Fifteen of the units have private tiled baths. Maid and linen service were furnished by the management.

On September 3, 1943, the Rent Director for the Lake Charles Defense-Rental Area issued an order decreasing the maximum rent, which complainant was receiving for Gable Lodges on the rent freeze dates, under the authority granted in Section 5(c) (1) of the Rent Regulation for Hotels and Rooming Houses in the Lake Charles Defense-Rental Area, which provides:

"The Administrator at any time * * * may order a decrease of the maximum rent otherwise allowable, only on the grounds that: (1) the maximum rent for the room is higher than the rent generally prevailing in the Defense-Rental Area for comparable housing accommodations on the maximum rent date."

Objecting to this order, complainants, Gable Management Corporation, and W. F. Horsting, its president, sought review by the Regional Administrator for Region V, and thereafter, the Regional Administrator entered an order confirming in substance the maximum rents as fixed by the Rent Director of the Lake Charles Area.

Subsequently, in protest proceedings, the Administrator allowed slight increases in rates for certain of the units, but generally affirmed the determination of the Rent Director, dismissing in part, granting in part, and otherwise denying the claims of protestants, who thereafter filed complaint against the Administrator in this Court.

There is no question that Gable Lodges is a very attractive tourist court, and, in appearance, much more desirable than any of the other courts selected for comparison. It has the lounge and recreational facilities that are lacking in the other places. It appears to be located in a large, spacious, beautiful grove. The architectural style of the separate lodges and the central building is admirable. No liquor is sold on the premises. The patronage seems to have been made up of a high type of citizens.

By the action of the Office of Price Administration, the rents for Gable Lodges were reduced 40% below the rates in effect during the 30-day period prior to March 31, 1942, which was the critical rent date for the Lake Charles Defense Area; and this reduction resulted in a loss of gross rentals of more than $600 a month. Complainants

say that this reduction of rentals necessitated the closing and the loss of use of the premises from April 26, 1944, to the present time. There is, however, as pointed out by counsel for the Administrator, nothing in the record to show that the lodges were not operated profitably, or could not have been so operated, with the reduced rentals. It may be remarked, further, that counsel for the Administrator suggest that among the reasons why complainants decided to suspend operations of Gable Lodges, may have been the fact that, due to war time conditions, it became difficult to secure services, and also, that certain war plants in the area were closed down. But the reason for the suspension of operations is a question not here in issue. The foregoing observations serve to give some of the background of the controversy.

Complainants charge that the action fixing the maximum rental rates was arbitrary and capricious, in that such rates do not represent a fair rental for the housing units, and are less than the rental rates generally prevailing for comparable housing accommodations in the Lake Charles Area on March 1, 1942, and for the thirty days preceding that date. It is further charged that there was no substantial evidence on which to base the determination of rentals by the Price Administrator. Summarized more specifically, the contentions of complainants are: (1) That complainants' units should have been compared with hotels in Lake Charles rather than (as they claim) with inferior tourist court accommodations; (2) that the units in question are superior to those in the tourist courts used for comparison, because they are modern, located on more spacious grounds, provide recreational facilities, and are equipped with a central lodge and lounges; (3) that comparisons of room sizes of units at other tourist courts used as comparables, show that the registered rents for complainants' units should not have been disturbed.

The questions presented for the decision of the Administrator in the protest proceedings were factual: (1) Whether the registered rents for complainants' units were higher than the rents generally prevailing for comparable accommodations in the area on the maximum rent date; and (2), in case such registered rents were higher than those generally prevailing, then, a determination of the amounts at which maximum daily and weekly rates should be established for each of the complainants' units, based upon the rent generally prevailing for comparable units in the Lake Charles Defense-Rental Area on March 1, 1942.

In arriving at his decision on these questions, the Administrator had before him a considerable body of data, pertaining to numerous tourist courts or camps and hotels located in the area, together with affidavits of Daniel P. Gerald, Rent Examiner-Inspector in the Lake Charles Defense-Rental Area office of the Office of Price Administration, which are referred to by counsel for the Administrator as containing "painstaking and infinitely complete details for a great number of units at Gable Lodges, Canaysho Gulf and Sulphur Courts, including location, size services, equipment, furnishings, maximum rent date rents, etc., upon which data—assembled after physical inspections—his expert opinion was predicated."

We may here observe that because of the strenuous attacks made upon the Gerald affidavits by complainants, we have subjected this evidence to the utmost scrutiny, and have carefully considered it in the light of all the other proofs, as well as the adverse claims in the case. In fact, our chief concern in the consideration of this case has been with respect to the affidavits of Gerald, which were incorporated into the record by order of the Price Administrator, and which were relied upon for the statements of fact therein as well as for the expression of expert opinion. For the original decrease in the rental rates in complainants' units was based upon Gerald's investigation, findings, and report, and the determination of the Administrator likewise was largely founded on the same data, as well as upon the Gerald affidavits with reference thereto, and in explanation of claimed inconsistencies therein. Certainly, if Gerald's investigation and report is found to be characterized by capriciousness and carelessness, and if the statements which he set forth as facts in his affidavit are found to be erroneous in many and vital particulars,— even though he afterward corrected them under attack by complainants,—we would have no hesitation in holding that they could not be said to constitute substantial evidence, sufficient to support the determination of the Administrator, who admittedly relied largely thereupon in arriving at his decision.

In view of the attacks made upon the Gerald evidence, and because of the important bearing of his investigation, report, and

affidavits upon the final conclusions of the Administrator, some consideration of the charges made by complainants, and of the explanations interposed thereto by counsel for the Administrator is required.

To proceed, therefore, to the principal arguments of complainants on this phase of the case, they say, at the outset, that Gerald set forth in his first affidavit that he had based his determination of rental rates primarily on the size of the subject units; and that, when complainants filed a supplemental affidavit, pointing out that the units in question were as large or larger than the comparables used, Gerald then filed a second affidavit, in which he stated that he had been primarily concerned with whether the rooms were comfortable, full-sized rooms, or markedly inferior in size. This variation in emphasis, and in the criterion adopted, it is asserted, shows that Gerald was not painstaking, consistent, expert, or reliable, as an investigator or authority on the subject of rentals. In considering such a controversy, it is necessary to be exact. What Gerald actually said in his first affidavit, in speaking of the units of Gable Lodges was, (as revealed by the transcript): "The variance in the rates on these units, as reflected by the original registration statement and by the Director's Order, are principally due to the difference in the sizes of these units. For instance, Units #6 and #7 in the Office Building are smaller in size than Units #3, #4, #5, and #6.* Units #20, #21, and #22 are equipped only as sleeping rooms, and do not have private baths. Units #10-11, #16-17 and #18-19, double cabins are superior to Unit A-B, for the reason that they are located in the principal group of cottages, have adjoining garages, and are nicer cabins, whereas Unit A-B is an inferior cottage, without garage, and is not located in the principal group."

In brief, Gerald said that, as reflected by the original registration statement and the Director's order, the variation in rates *among the units at Gable Lodges,* was *principally* due to differences in size. This appears to be an accurate statement, as shown by the examples he cites, for he mentions Unit #6, which is twelve by eighteen feet, and Unit #7, which is fourteen by eighteen feet, as being smaller in size than Units #3,

#4, and #5, which all measure fourteen by twenty-two feet.

In the foregoing statement Gerald was not speaking of units comparable to Gable Lodges. When, however, complainants pointed out that the units at Gable Lodges were as large or larger than those which had been selected in other tourist courts as comparable, Gerald answered in a further affidavit:

"Protestant makes a detailed *comparison of the relative sizes of the rooms and cabins of Gable Lodges with those of Canaysho and Sulphur Tourist Courts.* In establishing the rates of Gable Lodges *in comparison with the other courts as to room size,* principal consideration was given to as to whether the rooms were comfortable, full-size rooms, or markedly inferior rooms because of size * * *." (Italics supplied)

In his final determination of the matter, the Administrator stated, in his opinion: "Room size is merely one element to be taken into consideration in arriving at maximum rental values, along with such other factors as furniture, location, facilities, services, etc. The record indicates that in expressing his opinion as to rents to be established for units at Gable Lodges, affiant Gerald gave principal consideration to whether the rooms were comfortable, full-size rooms, or markedly inferior because of size * * *. In any event, the Administrator in the ordinary course has taken room space into consideration as one factor of comparability in establishing maximum rates."

In spite of the able and strenuous presentation of the foregoing by counsel for complainants, as revealing that these statements and opinions of Gerald are so contradictory, vacillating and uncertain that no credence or weight is to be given them, we are unable to agree with conclusions to this effect, and find no reason, from our consideration of the facts and circumstances of the case in this regard, why the administrator was obliged to discount or disregard such evidence.

As to the alleged mistakes made by Gerald, it is charged that in his examination of only eighteen Gable Lodge Units he missed three garages; that he found Unit #20 to be larger than the two adjoining Units #21

---

* This reference to Unit #6 is either a mistake or typographical error. Gerald had already referred to Unit #6 in the Office Building as being smaller in size than those units thereafter enumerated. There is only one unit designated by the number 6 at Gable Lodges.

and 22, whereas it is the smallest of the three; that he made obvious errors in his measurements of the room in Unit #10-11, stating that the size of each room was ten by twenty-one feet, whereas they were, respectively, twelve by twenty-one, and twelve by fourteen; and that he reported that four specified units had combined bath-tubs and shower-baths, whereas they were equipped only with bath-tubs.

Moreover, it is asserted that when he referred to the Sulphur Court units, which were used as comparable to those in Gable Lodges, he mentioned only four units thereof as having complete kitchenettes with sinks and stoves in his first affidavit, but that, in his second affidavit, he described nine of such units as having this equipment. Granting this to be the case, it appears that the latter statement is true; and the complainants were not prejudiced in any way by the report or affidavit in this particular. We are not persuaded that the criticized omission from the first affidavit was, in itself, of such import or significance as to place the Administrator under the compulsion of rejecting the evidence of Gerald on this, or any other, feature of the case.

With respect to the other claimed errors, Gerald admitted that he listed four of the Gable Lodge units as having combined bath-tubs and showers, whereas they had only bath-tubs; that he had reported Unit 20 as being larger than #21 and #22, because of the individual lavatory belonging to #20, with which the other two units were not equipped; and that the mistake in the measurement of the two rooms in Unit #10-11, was the result of a typographical error, which he subsequently corrected. As to the garages, it appears that Gerald did not overlook the garages in question. He first stated, apparently from a review of his inventory which had been taken more than a year previously, or from his memory, that the double Units #10-11, #16-17, and #18-19, had attached garages. This statement he subsequently admitted was incorrect; they had separate garages.

However, Gerald did fix rates of $2.00 a day for Unit #20, which had a lavatory but no bath, and $1.50 per day for Units #21 and #22, which had no bath or lavatory (except in common with the others)—and at the same time fixed rates of $1.50 per day for rooms #6 and #7, both of which had private baths. This would indicate that a person would have to pay as much or more for a room without a private bath as for one with a bath. Gerald sought to explain that the reason for the existence of this incongruous situation was because he had been informed "that these rooms (#20, #21 and #22) were being rented only to transient, nightly guests, whereas the other units were being rented to weekly guests with housekeeping privileges." With this lame explanation Gerald was apparently willing to leave the matter. This was again emphasized when the president of the complainant company wrote to the Area Rent Director-Attorney, stating that "you place a higher rate per week for two people on a room without a bath, than a room with a private bath, as evidenced by rates on rooms 20 and 6. On room 20, without private bath, you allow $14.00 per week for two persons, and on room 6, with private bath, you allow 9.00 per week." In answer to this communication, the Area Rent Director-Attorney replied: " * * * you called my attention to the fact that we have placed a higher rent per week on No. 20 without a private bath than we have on room No. 6 with a private bath. The notice of the proposed increase does not set any weekly rate on room No. 20, as your registration does not show it is offered on a weekly basis; therefore, by charging on a straight daily rate, the rent on this room will naturally exceed No. 6, as you mentioned." While the foregoing method of determination of rental rates supports complainants' argument that the rates for a room with a private bath, in this instance, were less than for one without, the eventuality was that the Administrator sought to remedy whatever inequality here existed, by increasing the rates for the rooms with bath, on the protest proceedings.

Whatever the criticism that might be made of Gerald's method of fixing the rental rates for the two units in question, it is to be borne in mind,—in passing upon the question of whether the Administrator had the right to rely, generally, upon his report and opinion,—that Gerald was an experienced man in the matter of housing accommodations, and had made approximately two thousand physical inspections and studies of such accommodations, in order to determine the rents generally prevailing in the Defense-Rental Area in question on the maximum rent date. Moreover, there is nothing to show bias or incapacity or anything other than a disinterested attitude and approach on the part of Gerald in attempting to arrive at conclusions of value and

comparability, which from the nature of the problem, were not susceptible of concreteness and exactitude. In his affidavit, certain details of which are here particularly criticized, Gerald embodied several hundred statements of fact. When the errors mentioned were called to his attention, he corrected them, and again expressed his opinion with regard to the rental rates. The Administrator, after consideration of all the circumstances, found that the errors in question did not detract from the weight and credibility to be given Gerald's report and opinion, and that the record did not tend to suggest that his evidence should be rejected in any material respect. We can not find here that the Administrator's conclusions in this regard are capricious and arbitrary.

Having, therefore, concluded that the consideration of the Gerald evidence by the Administrator was proper, we turn again to the other questions in the case. In considering the issues presented by the controversy, the Administrator found as a result of comparing the Gable Lodge units with those of other tourist courts, that, on the basis of size, location, facilities, and furnishings, the units at Gable Lodges might be conveniently classified in three groups: (1) Certain detached cabins with private baths and garage facilities, and single rooms with showers, located in the main building with its lobby-lounge; (2) three units in the main building with bath-room facilities shared among them; (3) double cabins, consisting of two rooms each, containing modern furniture, and the same services and facilities as provided in (1), except that these cabins were not provided with attached garages.

■ In establishing maximum rents for the above-named units, the Administrator declared that the record contained ample data concerning the subject units and other units from which the de novo comparability determination required by the protest might be made, and further, found that Sulphur Court and Canaysho Court were the accommodations most closely comparable to Gable Lodges. He, therefore, proceeded to determine the maximum rents accordingly. The Administrator's finding of comparability, under the circumstances disclosed by this case, is, as a factual determination, not subject to review by this court, since there is a reasonable basis in the evidence for his conclusions in this regard.

■ In fixing the rental rates for complainants' units, the Administrator considered the advantages of recreational facilities, lobby-lounge, and spacious grounds at Gable Lodges, as compared to the other courts, and, at the same time, balanced the advantages of the latter in being situated in municipalities, with ready access to eating, shopping and trading facilities, and with other more favorable features. In addition, whether there were telephone and cafe services, electric fans, sinks, stoves and kitchenettes, or similar advantages, was all considered in comparing one unit with another.

Basing his determination upon the data mentioned, and upon the opinion evidence of the witness Gerald, the Administrator, after considering the advantages and disadvantages of the various units of Gable Lodges, as compared with the units of Canaysho and Sulphur Courts, making due allowance for the differences between complainants' units and comparable accommodations, and after reviewing the detailed objections advanced to the various proofs by complainants, concluded that the rents registered for complainants' accommodations were higher than the rents generally prevailing on March 1, 1942, for comparable accommodations in the area in question. He further determined that the maximum rents for the complainants' units should be established at the levels previously fixed by the Rent Director, except that the maximum daily rates for two of the units above mentioned should be increased, in specified amounts, for single and double occupancy and occupancy by three persons, both on a daily and on a weekly basis.

■ The claim that the Administrator erroneously failed to base his determination upon data which complainants submitted for various hotels in the area, which they asserted were the sole establishments in that vicinity comparable to Gable Lodges, is without merit. From the record, it would appear that the general characteristics of the hotels are not shared by Gable Lodges, and are not comparable to them. Moreover, it appears that complainants presented no specific data showing maximum rent date rentals, furniture, equipment, services, etc., for any units in the hotels in question, or any evidence based upon physical inspection of particular individual rooms or units, as compared to the extensive inspection made by Gerald. From our examination of the

evidence, the Administrator cannot be said to have been arbitrary and capricious in his determination that the subject units were not comparable to rooms in the various hotels in Lake Charles.

Complainants' contention that the units in Canaysho and Sulphur Courts, relied upon by the Administrator, were not comparable, and were, in fact, so greatly inferior to the subject units that the decrease in the Gable Lodge maximum rents resulting from the comparison which was used for prevailing rents, was arbitrary, fails to give consideration to the careful analysis of the various features of size, and differences in equipment, furniture, furnishings, services, and locations, with respect to both the units in Gable Lodges and the units in the other two courts.

It would serve no purpose to rehearse further the minutiae of the evidence. The determinations made by the Administrator were factual. It is our conclusion that they were clearly and amply supported by substantial evidence.

A judgment will, accordingly, be entered, dismissing the complaint.