**BELL v. FLEMING, Temporary Controls Administrator.**

**No. 307.**

United States Emergency Court of Appeals.

Heard at Dallas, Tex., Sept. 24, 1946.

Decided Jan. 15, 1947.

Before MARIS, Chief Judge, and MA-GRUDER and McALLISTER, Judges.

Norman R. Crozier, Jr., of Dallas, Tex., for complainant.

Eli A. Glasser, Atty., O.P.A., of Washington, D. C. (Carl A. Auerbach, Acting Gen. Counsel, Harry H. Schneider, Chief, Court Review Rent Branch, and Isidore Bassoff, Atty., O.P.A., all of Washington, D. C., on the brief), for respondent.

McALLISTER, Judge.

This case is concerned with Section 5(a) (3) of the Rent Regulation for housing in the Dallas Defense-Rental Area. 7 F.R. 8596.

In the above named rental area, complainant is the owner of two apartment buildings, one of which is known as the Franklin Apartments, and the other, the Walters Apartments. The first is one of the newest apartment buildings in Dallas, located in a highly desirable residential district; the latter apartment building is older and less conveniently located. Both buildings contain furnished one, and two room apartments, and "efficiency" apartments. Sixteen of these units are the subject of this controversy.

Shortly after the effective date of the regulation, on March 1, 1942, and continuing through 1943, complainant filed a series of petitions seeking increases of rentals by way of upward adjustments of the maximum rent which had been established for the sixteen units above mentioned. The petitions filed under Section 5(a) (3) of

**418**

the regulation[1] were based upon the ground that there had been a substantial increase in the services, furniture, furnishings, or equipment provided with the accommodations since the date on which the maximum rent was determined. In his petitions, complainant set forth that since March 1, 1942, he had supplied linens, bedding, cutlery, kitchen utensils, mantle mirrors, and full length door mirrors. Moreover, he showed that equipment, lamps, chairs, coffee tables, pictures, and a roll-away bed and studio couch were supplied at the request of certain tenants of the units. In two cases, increased rentals were asked because of additional occupancy. All of these petitions were granted by the Area Rent Director. Of the sixteen units granted increases, only six had been inspected. Of these six, the Rent Inspector recommended denial in toto of two of the petitions, and only a small increase in four. Among the increased rentals granted by the Area Rent Director were allowances of $20 a month for a credenza (a kind of sideboard), and a plate glass mirror over the mantle; $10 per month for the addition of two mirrors and two lamps in another apartment; $10 per month in a two bedroom unit, for the reason that it was occupied by the wife of an Army officer, then overseas, and her two children, which occupancy, it was asserted, was greater than the landlord's practice permitted for the regular $110 rental.

On March 20, 1944, about a year and a half subsequent to the last increase granted, there was a change of rent directors in the Dallas Defense-Rental Area. The new director, after an examination of the files, concluded that the increases that had been granted on complainant's petitions were excessive and contrary to the regulation. Accordingly, he determined upon the reopening of the proceedings, pursuant to the pertinent procedural regulation[2] for reconsideration of the petitions and orders that had been issued in the matter. Notices were given to complainant of the reopening of the proceedings; and after inspection of the premises in question, and the presentation of evidence by complainant, the new rent director found that the increased rents theretofore granted were unjustified; that in certain stated cases, no garage facilities were being furnished, although they were included in the rent; that there was no actual additional occupancy where rental increases had been granted on that ground; and that, in general, the increased rentals that were granted were not warranted under the statute.

---

[1] Section 5(a) (3) provides:

"Sec. 5. *Adjustments and other determinations.*—In the circumstances enumerated in this section, the Administrator may issue an order changing the maximum rents otherwise allowable or the minimum services required.

"(a) *Ground for increase of maximum rent.*—Any landlord may file a petition for adjustment to increase the maximum rent otherwise allowable, only on the grounds that:

\* \* \* \* \* \* \* \*

"(3) *Substantial increase in services, furniture, furnishings or equipment.*—There has been a substantial increase in the services, furniture, furnishings or equipment provided with the housing accommodations since the date or order determining its maximum rent. No increase in the maximum rent shall be ordered on the ground set forth in this paragraph (a) (3) unless the increase in services, furniture, furnishings or equipment occurred with the consent of the tenant or while the accommodations were vacant: *Provided,* That an adjustment may be ordered, although the tenant refuses to consent to the increase in services, furniture, furnishings or equipment, if the Administrator finds that such increase (i) is reasonably required for the operation of a multiple dwelling structure or other structure of which the accommodations are a part or (ii) is necessary for the preservation or maintenance of the accommodations."

[2] Section 1300.208(b) of Revised Procedural Regulation No. 3 provides:

"§ 1300.208. *Action by the rent director on petitions for adjustment or other relief.*—(b) An order entered by a rent director upon a petition for adjustment or other relief, or an order entered by a rent director on his own initiative, shall be effective and binding until changed by further order and shall be final subject only to application for review or protest as provided in §§ 1300.209 and 1300.210 and §§ 1300.216 to 1300.242, inclusive, of this regulation. An order entered by a rent director may be revoked or modified at any time upon due notice to the petitioner."

He, therefore, issued orders granting the original petitions, but in amounts ranging from $5.00 to $7.50 per month, as compared with the original grants of $10 to $30 per month. These superseding orders were made prospective only. Following their entry, complainant filed sixteen applications for review. Pending determination of these applications, the rent director, on the application of another tenant and after due notice, decreased the maximum rents for additional units in the Franklin Apartments under Section 5(c) (3) of the regulation [3] on the ground that the garage service included in the maximum rent for that unit had since been discontinued. Complainant thereupon filed an application for review of the last named determination as well as the others. The Regional Administrator denied all the applications for review. Complainant then filed protests which were consolidated and eventually heard by a Board of Review, which recommended that the retroactive effect of a reduction in rent in a certain unit, because of a failure to furnish garage facilities, should not be retroactive, but only prospective; and, otherwise, it approved of, and sustained the action of the rent director in the reduction of rentals. The Price Administrator adopted the conclusions and recommendations of the Board of Review and, accordingly, also sustained the rental reductions.

Complainant first contends that the reopening of the proceedings after the first increase in rentals and reconsideration of the landlord's petitions, with subsequent grant of increases in amounts less than originally allowed, was without legal warrant or authority. He claims that the provisions of Section 208(b) of Revised Procedural Regulation No. 3 concerning revocation or modification of orders entered by a rent director upon due notice are contrary to public policy and violative of the federal Constitution. The underlying assumption of this argument is that orders issued by a rent director are final in form, and, on their issuance, rights become vested and the proceedings, fully adjudicated. Complainant further argues that the lapse of a year and a half beween the action of the first rent director and his successor was, under the doctrine of laches, a bar to the reopening of the proceedings. Finally, complainant contends that the Administrator's determinations are improper because they were an attempt to fix rents for housing accommodations under Revised Procedural Regulation No. 3, whereas such regulation, as amended, fixes no standards for the reduction of rent and is "contrary to public policy, and violative of the Constitution of the United States, in that no standard or criterion of rent is fixed in said regulation." Complainant assumes that while previous government action may be modified or corrected because of fraud, accident, or mistake of law, the proceedings here instituted, were arbitrary, unreasonable, malicious and resulted merely in substitution of the judgment of one administrative official for that of another.

We may here dispose of the argument that doctrines such as laches, equitable estoppel, and res adjudicata prevent the exercise of the Administrator's authority to modify regulations and to reopen proceedings for the purpose of applying the provisions of the rent regulations to the facts as developed in the course of the reopened proceedings. For this authority clearly appears from the express provisions of the Emergency Price Control Act, 50 U.S.C.A.Appendix, § 901 et seq.

Section 2 of the Act provides: "Any regulation or order under this section may be established in such form and manner, may contain such classifications and differentiations, and may provide for such adjustments and reasonable exceptions, as in the judgment of the Administrator are necessary or proper to effectuate the purposes of the Act * * *."

---

[3] Section 5(c) (3) provides:

"(c) *Grounds for decrease of maximum rent.*—The Administrator at any time, on his own initiative or on application of the tenant, may order a decrease of the maximum rent otherwise allowable only on the ground that:

"(3) *Decrease in services, furniture, furnishings or equipment.*—There has been a decrease in the minimum services, furniture, furnishings or equipment required by section 3 since the date or order determining the maximum rent."

Section 204(a) of the Act provides: "Upon the filing of such complaint (such as is here before us) the court shall have exclusive jurisdiction to set aside such regulation, order or price schedule, in whole or in part, to dismiss the complaint, or to remand the proceeding: Provided, That the regulation, order, or price schedule may be modified or rescinded by the Administrator at any time notwithstanding the pendency of such complaint."

■ Under the above provisions of the statute, regulations were properly promulgated providing for the exercise of the power to reopen and modify previous adjustment orders. Sections 5(c) (3) and 5(d) of the regulation provide:

"(c) *Grounds for decrease of maximum rent.*—The Administrator at any time, on his own initiative or on application of the tenant, may order a decrease of the maximum rent otherwise allowable only on the ground that:

"(3) *Decrease in services, furniture, furnishings or equipment.*—There has been a decrease in minimum services, furniture, furnishings or equipment required by section 3 since the date or order determining the maximum rent."

"(d) *Orders where facts are in dispute, in doubt, or not known.*—If the rent on the date determining the maximum rent, or any other fact necessary to the determination of the maximum rent, or the services, furniture, furnishings or equipment provided with the accommodations on the date determining the maximum rent, is in dispute between the landlord and the tenant, or is in doubt, or is not known, the Administrator on petition of the landlord filed within thirty days after the effective date of regulation, or at any time on his own initiative, may enter an order fixing the maximum rent by determining such fact, or determining the services, furniture, furnishings, and equipment provided with the accommodations on the date determining the maximum rent or both."

In Section 1300.210 of Revised Procedural Regulation No. 3, it is provided that: "An order entered by a regional administrator upon an application for review may be revoked or modified *at any time upon*

*due notice to the applicant.*" (Emphasis supplied.)

In Homewood Development Co., Inc., et al. v. Bowles, Em.App., 1945, 148 F.2d 850, 851, the exercise of the power to reopen and modify previous adjustment orders was approved by this court in the following language:

"But even such final orders are, under the provisions of § 1300.208(b) and 1300.-210 of Revised Procedural Regulation No. 3, subject to review, revocation or modification by the rent director, regional administrator, or the Administrator himself, if it should later become apparent that the increases allowed were excessive."

■ Complainant, as has been said, contends that the reopening of the proceedings, after the first grant of increased rentals, was violative of complainant's Constitutional rights. It is declared that the provisions of the Act or the regulations authorizing such a reopening of proceedings, destroy interests vested in complainant; that modification of the prior orders is unconstitutional for the reason that no standards are provided for revoking or setting aside orders establishing rentals; and that no limitations are provided against arbitrary, capricious, or unreasonable acts.

Complainant acquired no vested rights to the rents fixed in the first order granting increases. It is inherent in the entire plan and policy of rent and price control that sellers and lessors have no vested right in their maximum prices or rents. Ebling Brewing Co. v. Porter, Em.App.1946, 156 F.2d 1012, 1021. Under rent control, as provided for in the Emergency Price Control Act, rental prices are to be maintained at their March 1, 1942 level except for increases validly granted under the statute. Such increases are to be no more than the actual value of the services, furniture, furnishings, or equipment provided to the rented units. Evidence of their value may be taken not only from their purchase price but also from the cost of supplying similar services in other dwelling units. Where the evidence shows that the increases granted to a landlord are in excess of these costs, they are subject to the control of the Administrator even though

so-called final orders have been issued. It is interesting to note, however, that in the original orders issued to complainant, there was stated that "this order is now in effect and will remain in effect *until changed by the Office of Price Administration*." (Emphasis supplied.)

As for the claim that in the modification of prior orders establishing rentals, no standards are provided, and there are no limitations against arbitrary and capricious action by the Administrator, it must be obvious that upon the reopening of the proceedings, the same criterion applies as governed the prior application of complainant. "The standard for adjustment in this type of case is set forth in Section 5 of the regulation as follows:

" 'In those cases involving * * * an increase or decrease in the furniture, furnishings or equipment, (or) an increase or decrease of services, * * * the adjustment in the maximum rent shall be the amount the Administrator finds would have been on the maximum rent date (January 1, 1941), the difference in the rental value of the housing accommodations by reason of such change * * *.' " Homewood Development Co. v. Bowles, supra, page 853 of 148 F.2d 850.

In applying the foregoing standard, the Administrator considers the difference between actual rentals on the maximum rent date of substantially identical units in the same building, some rented furnished and some unfurnished; and the difference represents the increase of rental value as of the maximum rent date by reason of the addition of the furniture, determined by bargaining in the rental market rather than by reference to the opinion of experts.

Enough has been said to demonstrate clearly that the standards are sufficiently definite and that the landlords and lessors are amply protected against arbitrary, unreasonable, and capricious action by the Administrator. In respect to the case before us, it appears that in the first notices issued to complainant, in the proceedings to change the orders originally granting increase of rentals, complainant was informed that the purpose was to modify those orders on the ground that "the difference in rental value," because of the additions of equipment and the like, appeared to be less than had been previously determined. This notice disclosed the definite basis for reconsideration—in keeping with the regulation—and answers the contention that the proceedings, provided for by the regulation, were invalid for indefiniteness. We find no merit in the contentions of complainant that the reopening of the proceedings by the rent director was improper or unauthorized, or that orders reducing rentals in such proceedings destroyed vested interests or were unconstitutional because they permitted arbitrary determinations.

The remaining claims of complainant are to the effect that the Administrator's determination was not supported by substantial evidence. The factual issues presented for determination were whether there had been a substantial increase in the services, equipment, furniture or furnishings, provided with each of the units since March 1, 1942, and, if so, the difference in rental value of each of the units as of that date, by reason of the additions made thereto. The Administrator had before him the testimony of three rent inspectors and the former rent director. Their qualifications, appearing from the record, show them to have been experienced in the real estate business, building, construction, and selling, as well as furnishing and renting for a period of many years. They were sufficiently well versed in real estate values and practices in the Dallas Defense Area to merit consideration as expert witnesses. Opposed to them were five qualified and representative real estate men whose views were in serious contradiction to those of the inspectors in many particulars. The testimony of the inspectors and former rent director, which was relied upon by the Administrator, was based upon first hand knowledge of the regulation and complete familiarity with the applicable standards thereunder, as well as extensive personal studies and physical investigations, including inspections of various substantially identical furnished units in the area which were rented on the maximum rent date, some with and others without linens, bed-

ding, dishes, silverware, and cooking utensils; the testimony of complainant's witnesses was principally predicated upon such matters as original and reproduction cost, "fair return," and personal views as to the justice and fairness of rentals sought to be fixed; and their opinions were expressly based, in part, upon what they thought the landlords should have charged for linens, dishes, silverware, cooking utensils, and the like, as of the date establishing the maximum rents, rather than what was actually being charged therefor at that time. As to what such actual charges were, they had no personal knowledge, and they had no information as to what other landlords in the area were charging for such items on that date. Our review of the record convinces us that substantial evidence supports the orders in question. With regard to the question whether, in one instance, the rent on the "freeze date" was $110 per month or $90 per month, there was substantial objective evidence to show that the premises had been rented during the entire year in question at $90 per month. While this proof was sought to be disputed by complainant by evidence that the tenant of the premises had been also receiving a credit of $20 per month on another transaction, it was not convincing to the Administrator; and the weight of the evidence and the credibility of the witnesses is for the Administrator. Rabkin v. Bowles, Em. App., 1944, 143 F.2d 600; Spiller v. Atchison, Topeka & Santa Fe R., 253 U.S. 117, 40 S.Ct. 466, 64 L.Ed. 810. As long as he does not act arbitrarily or capriciously, his judgment will be upheld. Gable Management Corp. v. Bowles, Em.App.,1945, 151 F.2d 82. Here, although the evidence was conflicting, there was ample proof to support the findings of fact that the amount of increases awarded the complainant was not justified under the statute. It is not arbitrary for the Administrator to disregard the testimony of real estate men in preference to that of rent inspectors regularly inspecting housing accommodations. Rabkin v. Bowles, supra. As long as his order is supported by substantial evidence, it is not subject to review. Talbot v. Porter, Em.App.1946, 155 F.2d 375; Sirianni v. Bowles, Em.App. 1945, 148 F.2d 343.

In accordance with the foregoing, a judgment will be entered dismissing the complaint.