**SIRIANNI v. BOWLES, Price Administrator.**

**No. 172.**

United States Emergency Court of Appeals.

Heard at Buffalo, Feb. 1, 1945.

Decided March 20, 1945.

Cleveland W. Crosby, of Lackawana, N. Y., for complainant.

Stanley D. Metzger, of Washington, D. C., Atty. (Richard H. Field, Gen. Counsel, Nathaniel L. Nathanson, Associate Gen. Counsel, and Warren L. Sharfman, Chief, Court Review Rent Branch, Office of Price Administration, all of Washington, D.C., on the brief), for respondent.

Before MARIS, Chief Judge, and MA-GRUDER and LINDLEY, Judges.

MAGRUDER, Judge.

Michael Sirianni remodeled a thirty-five-year-old two and one-half story frame dwelling house at 1942 South Park Avenue, Buffalo, N. Y., and converted the same into five three-room apartments, varying somewhat in size of rooms, with private bath and standard utilities provided. He first rented these apartments, fully furnished and newly decorated, at $13 per week rental, in April, 1943. Since this date was after both the rent freeze date (March 1, 1942) and the effective date (July 1, 1942) of the Rent Regulation for Housing in the Buffalo Defense-Rental Area, 8 F.R. 14663, $13 per week became, under the terms of the regulation, the maximum rent for each apartment, subject to change by the Administrator in proceedings initiated by him under § 5(c) of the regulation in the event of a finding that the rentals so fixed by the landlord were higher than the rent generally prevailing in the area for comparable accommodations on the freeze date.

Subsequently, in proceedings under § 5 (c), the Area Rent Director issued orders reducing the maximum rents for the five apartments to $11, $6, $8, $8, and $9, respectively. Sirianni obtained review of such orders by the Regional Administrator, who entered an order revising the Rent Director's action and fixing the maximum rents at $10, $8, $8, $8, and $9, respectively. Sirianni then filed a protest with the Administrator against this order of the Regional Administrator.

On August 31, 1944, the Administrator issued an order denying the protest for the most part, though he granted a small adjustment upward in respect to one apartment over the maximum rent which had been fixed by the Regional Administrator. The order finally fixed the maximum rents

at $11, $8, $8, $8, and $9, respectively. Thereafter Sirianni duly filed his complaint in this court.

■ In his opinion accompanying the order denying the protest, the Administrator found "that all these apartments consist of three rooms, furnished, varying somewhat in the size of rooms, with bathroom, cooking fuel, electricity, central heating, and cold water provided by the protestant; the protestant does not, however, provide a mechanical refrigerator, hot water, ice or refrigeration, janitor service, garbage disposal, painting or decorating, a garage, or interior or exterior repairs." This finding of fact must be accepted by us, because it is supported by substantial evidence, that is, by an affidavit of the Chief Rent Inspector who inspected the premises, and also by the registration statements filed by the landlord himself.

■■ Complainant insists that the Administrator failed to give due weight to evidence that his rentals of $13 per week were not out of line with rents being charged on freeze date for two òr three similar apartments "on the same street and right in the same couple of blocks". But the applicable standard in the regulation is not so narrowly circumscribed; it is the rent generally prevailing on the freeze date for comparable accommodations *in the defense-rental area*. In making comparisons of rentals, the Administrator is not limited to units practically duplicating the subject accommodations and located "within the same couple of blocks". Two accommodations are "comparable" if they are sufficiently similar to be regarded by an expert as of substantially equal rental value. Two accommodations may also be "comparable", for present purposes, if they are sufficiently similar so that an expert, taking as a standard the rent prevailing for one, and making allowances for such differences as would be reflected in rental value, would be able to determine the appropriate corresponding rent for the other. Of course if, for example, as might be the case in some cities, the subject accommodation were one of a long row of dwelling houses constructed on an identical pattern, and with uniform equipment and services, the level of rents being charged on the freeze date for other houses in the row might be the most persuasive objective evidence of "the rent generally prevailing in the Defense-Rental Area for compar-

able accommodations on the maximum rent date", for the necessarily uncertain element of expert judgment as to comparability is thus reduced to a minimum. In such a case the Administrator might not be justified in seeking far and wide in the area for other more or less similar dwelling houses rented at a lower figure on the freeze date. But no such situation is presented in the case at bar. In fact, in his opinion, the Administrator considered the other units in the immediate neighborhood cited by complainant as comparable and yielding a rental of $13 per week or better on the freeze date, and concluded that such units had superior features, or were furnished additional services, not supplied with complainant's apartments.

■ In reaching his conclusion, the Administrator relied not only upon affidavits giving the expert judgment of the Chief Rent Inspector and a rent examiner of the Buffalo office as to the generally prevailing rental value of comparable accommodations on the freeze date, but also upon numerous instances of lower rentals prevailing for other accommodations regarded by the experts as comparable within a reasonable radius from complainant's apartments. Without setting forth the evidence in detail, we state our conclusion that there is sufficient evidence to sustain the Administrator's determination that, to conform to the standard set forth in the regulation, complainant's maximum rents should be reduced from $13 per week for each unit to the maxima fixed in the Administrator's order of August 31, 1944.

■ As indicated above, the Administrator's determination was based upon a specific finding by him as to the equipment and services which went with the complainant's accommodations. However, in his protest and complaint, and in supporting affidavits submitted on his behalf, complainant claims that he is actually furnishing considerably more in equipment and services than shown by his own registration statements, including hot water, refrigeration, janitor services, garbage disposal, interior decorating, and repairs. If such is the fact the landlord will, under the regulation, be entitled to petition for an adjustment of the maximum rents on account of a substantial increase in services and equipment.

Judgment will be entered dismissing the complaint.